**United States District Court**
**Western District of Kentucky**
**Louisville Division**

| | |
|---|---|
| Carl Whorton and Rachel Willis, as Co-Administrators of the Estate of Ella Whorton, Carl Whorton as Father and Next Friend of A.W. Whorton, a minor, Rachel Willis, as Guardian and Next Friend of J.N., a minor, and Glinda Phillips, as Guardian and Next Friend of S.Z., a minor | Case No. 3:26-cv-00006-DJH |
| Plaintiffs, | **Hearing Requested** |
| v. | |
| United Parcel Service, Inc., United Parcel Service Co. (Air), General Electric Company, The Boeing Company, and VT San Antonio Aerospace, Inc. | |
| Defendants. | |

### MOTION TO REMAND

UPS Air's own words are the strongest argument for remand. Just four months before removing this case, UPS Air told this Court that it is a citizen of Delaware and Kentucky, "with its principal place of business located at 1400 North Hurstbourne Parkway, Louisville, Kentucky 40223." **Exhibit 1**, Notice of Removal & Fed. R. Civ. P. 7.1 Disclosure Statement *Noe v. United Parcel Service Co.*, 3:25-cv-00566 (W.D. Ky. Sept. 5, 2025).[1] It also filed a Rule 7.1 Disclosure Statement in the same case that said, "[C]omplete diversity exists … because Plaintiff is a citizen of Indiana and [UPS Air] is a citizen of Delaware and Kentucky." *Id.*

---

[1] The exhibits referred to in this brief are attached to the Declaration of Burt A. Stinson, which is filed together with this Motion.

1

That admission was no accident. It was consistent with a decade of representations, including mandatory FAA regulatory filings, federal-court pleadings in at least four cases, secretary of state registrations in both Kentucky and Georgia filed under penalty of perjury, and UPS Air's own corporate publications, website, and job postings. Each of these identifies Louisville, Kentucky, as UPS Air's principal place of business.

The only change between September 2025 and January 2026 was the crash of UPS Flight 2976 in Louisville, killing 15 people. Now, facing wrongful death claims in Kentucky state court, UPS Air asks this Court to find that it is a Georgia citizen so it can litigate in its preferred forum: federal court. This is precisely the "jurisdictional manipulation" the Supreme Court warned courts to guard against in *Hertz Corp. v. Friend*, 559 U.S. 77, 97 (2010).

Plaintiffs appreciate that UPS Air previously convinced this Court that it is not a Kentucky citizen. However, at the time of that ruling the Court was not provided with the evidence presented below regarding UPS Air's structure, operations, and judicial and regulatory filings. Armed with that complete picture, this Court should conclude that the airline's principal place of business—its nerve center—is in Louisville, and remand the case back to state court.

## FACTUAL BACKGROUND AND TIMELINE

### I.    Crash and Procedural History

On November 4, 2025, UPS Flight 2976 crashed into a crowded industrial district south of the Louisville Muhammad Ali International Airport. ECF No. 1-1, Compl. ¶ 1. The crash caused a massive explosion that engulfed the district in a fire that took more than 30 hours to contain. *Id.* ¶¶ 4, 48. Fifteen people were killed, many more were injured, and a massive amount of property damage resulted. *Id.* ¶ 1. One of the victims was Ella Whorton, a 31-year-old wife and mother, who died in the explosion. *Id.* ¶¶ 48–49.

On December 3, 2025, Plaintiffs filed this lawsuit in Jefferson Circuit Court against five defendants whose negligence, they allege, caused Ella's death. The families of two other crash victims also filed suit against the same group of Defendants in Jefferson Circuit Court. On January 5, 2026, Defendant United Parcel Service Co. (Air) removed all three cases to this Court. *See Whorton et al. v. United Parcel Serv., Inc., et al.*, No. 3:26-cv-6; *Faith et al. v. United Parcel Serv., Inc., et al.*, No 3:26-cv-00007; *Hermosillo-Nunez v. United Parcel Serv., Inc., et al.*, No. 3:26-cv-8.

UPS Air, also known as UPS Airlines and UPS Co., is a Louisville-based airline corporation. It holds its own FAA air carrier operating certificate, separate from Defendant United Parcel Service, Inc., flies its own aircraft, employs its own crew, and manages the crew from Louisville. Compl. ¶ 72.

The removal notice cites just one basis for invoking federal jurisdiction: diversity of citizenship. It asserts that UPS Air is a Delaware corporation with its principal place of business in Atlanta, Georgia. That assertion is contradicted by UPS Air's own regulatory filings, website, public statements by its officers, Secretary of State filings in two states, and sworn pleadings in multiple recent federal court proceedings, including in this Court. UPS Air's removal notice makes no attempt to contend with any of this evidence or to rebut the citizenship allegations in the Complaint. Instead, it simply asserts that its "nerve center" is in Georgia, cites a single prior ruling for support, and claims complete diversity.

## II.    UPS Air's Corporate, Regulatory, and Judicial Filings

For at least the past decade, UPS Air has consistently held itself out to be a Louisville-based airline. Its corporate, regulatory, and judicial filings all confirm that UPS Air's "nerve center" is in Louisville, not Georgia.

3

**A.    Secretary of State Filings (2016 to Present)**

In June 2016, UPS Air filed a "Statement of Change of Principal Office Address" with the Kentucky Secretary of State, formally changing its principal office from "55 Glenlake Parkway NE, Atlanta, GA" to "1400 North Hurstbourne Parkway, Louisville, KY 40223." **Exhibit 2**, Statement of Change of Principal Office Address.

Since then, UPS Air has filed nine annual reports with the Kentucky Secretary of State. Each report certifies that its principal office is in Louisville, Kentucky. **Exhibit 3**, Kentucky Secretary of State Annual Reports (2017–2025). UPS Air has also filed nine annual registrations with the Georgia Secretary State over the same period, each of which also certifies that its principal office is in Louisville, Kentucky. **Exhibit 4**, Georgia Secretary of State Annual Registrations (2017–2025).

In sum, UPS Air has certified to two separate states' regulatory authorities, in at least 19 separate annual filings over the past decade, that its principal office is in Louisville. These are not casual representations. Under Kentucky law, information submitted to the Secretary of State constitutes a sworn statement made under penalty of perjury. KRS 14A.2-030. Under Georgia law, similarly, the inclusion of false statements in records submitted to state agencies is a felony. Ga. Code Ann. § 16-10-20. Federal courts routinely take judicial notice of such filings. *See, e.g.*, *Walker v. Martin*, No. 5:20-CV-77, 2023 WL 6050231, at *2 (W.D. Ky. Sept. 15, 2023); *Morse v. Fifty W. Brewing Co.*, No. 1:21-cv-377, 2022 WL 974342, at *3 (S.D. Ohio Mar. 31, 2022); Fed. R. Evid. 201(b)(2).

**B.    Judicial Admissions in Federal Court (2016 to Present)**

UPS Air has represented to federal courts on at least four separate occasions that its principal place of business is in Louisville.

4

First, in *UPS Co. v. DNJ Logistic Group, Inc.* (W.D. Ky. 2016), UPS Air filed suit as plaintiff in this Court, invoking diversity jurisdiction. In paragraph 17 of its Complaint, UPS Air stated: "UPS Airlines is a corporation organized under the laws of the State of Delaware with its principal place of business in Louisville, Kentucky." **Exhibit 5**, Complaint, *UPS Co. v. DNJ Logistic Grp., Inc.*, 3:16-cv-00609-GNS (W.D. Ky. Sept. 23, 2016).

In *Chau v. Air Cargo Carriers* (S.D. W. Va. 2019), UPS Air removed the case to federal court on diversity grounds. Its Notice of Removal stated: "Defendant United Parcel Service Co. is a FAA certificated Part 121 air carrier . . . with its principal place of business in Louisville, Kentucky." **Exhibit 6**, Notice of Removal, *Chau v. Air Cargo Carriers, LLC, et al.*, 2:19-cv-00452 (S.D. W. Va. June 13, 2019).

In *Matheson Flight Extenders, Inc. v. United Parcel Service Co.* (E.D. Cal. Bankr. 2024), UPS Air admitted in its Answer that its "principal place of business is located at 1400 N. Hurstbourne Parkway, Louisville, Kentucky 40223." **Exhibit 7**, Complaint & Answer, *Matheson Flight Extenders*, 2:24-ap-02141 (E.D. Cal. Bankr. Aug. 2024).

And just four months ago, in *Noe v. United Parcel Service Co.* (W.D. Ky. 2025), UPS Air removed the case and certified: "Because Defendant is a corporation organized under the laws of Delaware with a principal place of business in Kentucky, it is deemed a citizen of Delaware and Kentucky." **Exhibit 1**. And in its Rule 7.1 Disclosure, UPS Air represented to this Court in *Noe* that "complete diversity exists" based on its Kentucky citizenship. *Id*.

C.     **Corporate Publications, Public Statements, and Job Postings**

UPS Air and UPS Inc. have consistently held UPS Air out to the public as a Louisville-headquartered entity. In March 2025, UPS Air published its annual "UPS Air Operations Facts" sheet, available on the company's website, explicitly identifying its "Headquarters" as

5

"Louisville, Kentucky." **Exhibit 8**, UPS Air Operations Facts. UPS Air's own website describes its Louisville workforce as a "small army" of "over 20,000 employees." **Exhibit 9**, UPS Website, *7 Things You Didn't Know About UPS Browntails* (Aug. 14, 2024). Louisville Metro has separately confirmed that UPS Air is "the largest employer in Metro Louisville, with more than 25,000 employees working in air, ground and supply chain operations." **Exhibit 10**, Louisville Metro Press Release (Oct. 27, 2022).

UPS Air's jobs page refers to the company's Louisville headquarters as "the center of our worldwide air network." **Exhibit 11**, UPS Airlines Jobs Page. As of the date of this filing, UPS Airlines has 26 active aviation job postings and 504 archived aviation job postings for both domestic and international positions. Every one of them, regardless of whether the position is in Louisville, Hungary, Mexico, Austria, Italy, or elsewhere, states that "the company is headquartered in Louisville, Kentucky." **Exhibit 12**, UPS Airlines Job Postings.

### D.      Executive Leadership Based in Louisville

UPS Air's leadership structure reveals an autonomous management body working exclusively from Louisville. Its Kentucky-based executives include:

| Name | Position | Key Responsibilities[2] |
|------|----------|------------------------|
| Bill Moore | President of UPS Airlines | Accountable Executive |
| Houston Mills | President of Flight Operations | Global Oversight |
| Troy L. McCullum | President of Aircraft Maintenance & Engineering | Director of Maintenance (Part 119) |
| Jason Foote | Vice President | Corporate Strategy |

---

[2] Corporate leaders identified as having "Part 119" responsibilities occupy leadership positions that are required for an airline to comply with FAA regulations. *See* 14 C.F.R. § 119.65.

| Michael Francesconi | VP and Chief Counsel | Legal |
|---|---|---|
| Dave Smith | VP Airline Safety | Director of Airline Safety (Part 119) |
| Chris McCorkle | VP Industrial Engineering | Engineering Operations |

**Exhibit 13**, LinkedIn Profiles of UPS Air Executives.

All of these high-level decision makers currently represent to the public that they manage the company from UPS Air's Louisville headquarters, not from the parent-company's offices in Atlanta. *See* Compl. ¶¶ 20–21 (all aspects of the business are directed from Louisville, including "aircraft routing decisions, flight and maintenance crew assignment, and real-time global operations coordination," as well as "maintenance protocols," "fleet reliability," "inspection intervals," and "component decisions").

**LEGAL STANDARD**

A defendant may only remove a civil action "of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). A removing defendant arguing that diversity jurisdiction exists "bears the burden of establishing the parties' citizenships." *Akno 1010 Mkt. St. St. Louis Missouri LLC v. Pourtaghi*, 43 F.4th 624, 627 (6th Cir. 2022). If that party cannot prove "by a preponderance of evidence that the requirements for diversity of citizenship jurisdiction are met," then the Court must remand the case to state court. *Davis v. Schindler Elevator Corp.*, 2025 WL 2701688, at *1 (E.D. Ky. Sept. 22, 2025) (citing *Williams v. Aetna Life Ins. Co.*, 481 F.3d 369, 375 (6th Cir. 2007)).

In a diversity case, the removing a defendant must demonstrate that "all parties on one side of the litigation are of a different citizenship from all parties on the other side of the litigation," and that the minimum amount in controversy is met. *Coyne v. Am. Tobacco Co.*, 183

7

F.3d 488, 492 (6th Cir. 1999) (quoting *SHR Ltd. P'ship v. Braun*, 888 F.2d 455, 456 (6th Cir. 1989)); *see* 28 U.S.C. § 1332(a). Removal statutes are to be narrowly construed. *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 757 (6th Cir. 2000). Accordingly, "all doubts as to the propriety of removal are resolved in favor of remand." *Coyne*, 183 F.3d at 493.

For purposes of diversity, a corporation is deemed a citizen of both its state of incorporation and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). The Supreme Court has held that a corporation's principal place of business is its "nerve center," which is "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp.*, 559 U.S. at 92–93. The nerve center "should normally be the place where the corporation maintains its headquarters, provided that the headquarters is the actual center of direction, control, and coordination." *Id.* at 93. The only time that is not true is in cases of obvious jurisdictional manipulation, such as when a company claims as its headquarters a "mail drop box, a bare office with a computer, or the location of an annual executive retreat." *Id.* at 97.

The *Hertz* Court specifically acknowledged that the nerve center test could be subject to "jurisdictional manipulation" and instructed courts to guard against it. It warned that "if the record reveals attempts at manipulation," courts should look to "the place of actual direction, control, and coordination, in the absence of such manipulation." *Id.*

## ARGUMENT

Under *Hertz*, this Court's job is to determine the nerve center of UPS Air—not UPS Inc. These two are separate legal entities, with separate headquarters, in different cities. As explained below, UPS Air's certifications to the Federal Aviation Administration, its judicial admissions, its Secretary of State filings, and its numerous public statements all tell the same story: UPS

8

Air's nerve center is here in Louisville, not Atlanta. But even if this were a close question, remand is still required.

**I.     UPS Air Has Told the Federal Government it is Controlled from Louisville.**

UPS Air's own FAA-mandated regulatory documents indicate that its nerve center is in Louisville. FAA regulations require UPS Air to designate an "accountable executive" in its Safety Management Systems Manual. 14 C.F.R. § 5.25(a). The Accountable Executive is the person responsible for exercising "final authority" over operations, financial resources, and human resources, and who bears "ultimate responsibility" for the airline's safety performance. *Id.* In its SMS Manual, UPS Air designated the company president as its Accountable Executive. **Exhibit 14**, UPS Airlines SMS Manual at 12. And there is no question that the company's president, Bill Moore, is based in Louisville. **Exhibit 15**, WDRB News, *UPS Names New Leader of Louisville-based Air Division* (Sept. 19, 2023) (UPS president Bill Moore is "UPS's top ranking executive based in Louisville"); **Exhibit 13**, Bill Moore LinkedIn Profile (stating that Moore is located in Louisville, KY). By designating the Louisville-based president as its Accountable Executive, UPS Air has acknowledged under federal law that ultimate authority to "direct, control, and coordinate" the company's operations, finances, personnel, and safety performance emanates from Louisville, not from UPS Air's Atlanta-based parent company. *Hertz*, 559 U.S. at 92–93. *See* Compl. ¶ 17 (alleging that Moore, as president of UPS Air, "manages global air operations, UPS Worldport, 3,200+ pilots, aircraft maintenance decisions, and fleet grounding decisions" from Louisville).

UPS Air's contrary position flies directly in the face of what it has represented to the FAA. By arguing that its nerve center is really in Atlanta, UPS Air is effectively contending that

9

its designated Accountable Executive in Louisville does not actually possess the "final authority" and "ultimate responsibility" required by 14 C.F.R. § 5.25.

The Federal Aviation Administration clearly understands Louisville to be UPS Air's principal place of business, too. The FAA established a dedicated Certificate Management Office ("CMO") in Louisville—not Atlanta—to oversee UPS Air. This office holds direct regulatory authority over UPS Air's operating certificate. Any significant operational changes, including new routes, flight procedure modifications, and training program amendments, must be approved by the Louisville CMO. **Exhibit 16**, Federal Aviation Administration, United Parcel Service CMO.

Countless other senior company officers are based in Louisville as well. Among them are the company's President of Flight Operations Houston Mills, Vice President Jason Foote, VP and Chief Legal Counsel Michael Francesconi, President of Aircraft Maintenance and Engineering Troy McCullum, VP of Airline Safety Dave Smith, VP of Industrial Engineering Chris McCorkle, and many, many others. *See* **Exhibit 13**, LinkedIn Profiles of UPS Air Executives. All these officers currently represent to the public that the place they work—and from which they "direct, control, and coordinate" UPS Air's business activities, *Hertz*, 559 U.S. at 92–93—is Louisville, Kentucky. *See* Compl. ¶¶ 20–21 (all aspects of the business are directed from Louisville, including "aircraft routing decisions, flight and maintenance crew assignment, and real-time global operations coordination," as well as "maintenance protocols," "fleet reliability," "inspection intervals," and "component decisions").

## II.     UPS Air Has Repeatedly Told Courts its Principal Place of Business is Louisville.

Consistent with what it certified to the FAA, UPS Air has repeatedly told Courts—including this Court—that its principal place of business for purposes of diversity jurisdiction is in Louisville.

In *DNJ Logistic* (2016), UPS Air filed suit as plaintiff and invoked this Court's diversity jurisdiction by claiming that its principal place of business is Louisville, Kentucky. *See* **Exhibit 5**. In *Chau* (2019), UPS Air once again told a federal court it was a Kentucky citizen to secure removal. **Exhibit 6**. In *Matheson Flight Extenders* (2024), UPS Air admitted in a responsive pleading that it was a Kentucky citizen. **Exhibit 7**. And just four months before the removal of this case, UPS Air told this very Court in *Noe* that it was a Kentucky citizen when removing the case from state court. **Exhibit 1**.

Though UPS Air might prefer otherwise, a corporation's citizenship does not change according to its jurisdictional desires in a given case. This Court should take account of these judicial admissions, which are clearly inconsistent with UPS Air's assertion of Georgia citizenship in this case. It should not reward UPS for playing fast-and-loose with its citizenship when it wants the right to litigate in federal court to avoid a Louisville jury, Kentucky jury instructions, and a non-unanimous verdict requirement.

III.    **UPS Air's Corporate Filings List Louisville as its Principal Place of Business.**

In addition to its FAA registrations and federal court filings, UPS Air has made sworn representations to government agencies in Kentucky and Georgia that Louisville is its principal place of business. As noted above, for at least the past 10 years, UPS Air has told the secretaries of state in both Kentucky and Georgia that its principal place of business was in Louisville. *See* **Exhibits 2**, **3**, & **4**.

True, the "mere filing of a form" with the Secretary of State is not enough, on its own, to prove where a corporation's "nerve center" is located. *Hertz*, 559 U.S. at 97. However, barring unusual circumstances, a corporation's principal place of business "should normally be the place where the corporation maintains its headquarters." *Id.* at 93. The only time that isn't true is in

11

cases of obvious jurisdiction manipulation, like when a company claims as its headquarters a "mail drop box, a bare office with a computer, or the location of an annual executive retreat." *Id.* at 97. According to the UPS Air Operations fact sheet, published on March 31, 2025, and available on the company's website, the company's "Headquarters" is in "Louisville, Kentucky," as are its "Main Air Hub," its largest facilities, and the vast majority of its aircraft. *See* **Exhibit 8**, UPS Air Operations Facts.

In short, the Louisville headquarters is far from a "bare office with a computer." *Hertz*, 559 U.S. at 93. Indeed, virtually every employee in the company is based there. The company's own website boasts of a "small army" of "over 20,000 employees." **Exhibit 9**, 7 Things You Didn't Know About UPS Browntails. And nearly all of them work in Louisville. **Exhibit 10**, Louisville Metro Press Release (UPS Air is the "the largest employer in Metro Louisville, with more than 25,000 employees working in air, ground and supply chain operations."). In fact, so obvious is the centrality of the Louisville headquarters to the management of UPS Air's business that even Reuters, the day after the crash, referred to the "UPS Worldport in Louisville" as the "nerve center" of UPS Air's "global logistics" operations. **Exhibit 17**, Nov. 5, 2025 Reuters, *UPS Worldport in Louisville: A Nerve Center of Global Logistics* (Nov. 5, 2025).

## IV. This Court Should Reject the Contrary, Unsupported Assertions in the Removal Notice.

UPS Air's removal notice offers no factual argument in support of its assertion that the company's "nerve center" is in Georgia. Instead, it simply cites to an unpublished opinion issued by this Court in 2022, *DeVore v. United Parcel Service Co. (AIR)*, 2022 WL 509119 (W.D. Ky. 2022). There, a Kentucky plaintiff sued UPS Air in state court. *Id.* at *1. UPS Air removed and invoked this Court's diversity jurisdiction, claiming its principal place of business was in Atlanta, not Louisville. *Id.* In support of that argument, it offered the affidavit of its CFO, which

12

claimed that "all of UPS's current officers are located in Atlanta, Georgia," and that from there, they directed all of UPS Air's business activities. *Id.* The plaintiff in that case moved to remand, but he made no effort to rebut the factual assertions in the affidavit. Instead, he simply cited a Secretary of State filing from 2021 and a pleading from a 2016 case in which UPS Air previously claimed its principal office was in Louisville. *Id.* UPS Air characterized these statements as "outdated." *Id.* And because the plaintiff provided no evidence that UPS Air's "nerve center" was in Kentucky as of 2022, the Court denied the motion to remand. *Id.*

This case is different, and the Court should not rely on *DeVore* for three reasons.

*First*, unlike *DeVore*, Plaintiffs in this case have provided substantial evidence, most of it from UPS Air itself, showing that UPS Air's nerve center is in Kentucky. As noted above, its president and countless other officers are based in Louisville, along with virtually its entire workforce. It directs global operations from Louisville. And as the base of operations for the company's "accountable executive," 14 C.F.R. § 5.25(a), every aspect of its operations, finances, human resources, and safety performance is controlled from Louisville as a matter of federal aviation law. So leaving aside the merits of UPS Air's self-serving and untested factual assertions in *DeVore*, there is simply no question that on this record, UPS Air's officers direct, control, and coordinate company activities from Louisville.

*Second*, UPS Air cannot possibly argue, as it did in *DeVore*, that Secretary of State filings and court pleadings attesting to its Kentucky citizenship are "outdated." That argument implied that the principal office had previously been in Kentucky, but that at some point after the 2021 Secretary of State filing attached to DeVore's remand motion, it moved to Georgia. But all the evidence cited above post-dates this Court's ruling in *DeVore*. In every year since UPS Air represented to this Court that its principal office was in Georgia, it has submitted Secretary of

13

State filings in both Georgia and Kentucky that directly contradict that claim. So do UPS Air's statements to the California federal court in 2024 and to this Court in September 2025. And the various statements by UPS Air and its officers indicating Kentucky citizenship are all still available online as of this writing.

*Third*, UPS Air's habit of claiming a different citizenship status from lawsuit to lawsuit is just the kind of "jurisdictional manipulation" the Supreme Court warned against in *Hertz*, 559 U.S. at 97. UPS Air is more than happy to claim Kentucky citizenship in cases where it doesn't perceive any advantage to claiming non-Kentucky citizenship. Thus, it did not hesitate to claim, in cases filed in 2016, 2019, 2024, and 2025, to be a Kentucky citizen. *See* **Exhibits 5**, **6**, **7 & 1**. But in cases where UPS Air views Kentucky citizenship as a problem—like when it wants to remove a case brought by a Kentucky plaintiff in state court—it claims to be from Georgia. That's what it did in *DeVore* in 2022 and in this case in 2026. But even as UPS Air's representations to various courts have morphed over time, its representations to federal regulators, to the public, and to the governments of Kentucky and Georgia have not. In all its out-of-court pronouncements, UPS Air claims citizenship in Kentucky, not Georgia. As such, the Court should not allow it to engage in such transparent procedural manipulation, particularly given the deluge of litigation arising from the crash of UPS Flight 2976 that is likely to flood this Court if UPS Air is found to be diverse from all Kentucky plaintiffs.

All the evidence adds up to one conclusion: UPS Air is based in Kentucky. Therefore, it cannot invoke diversity jurisdiction against a Kentucky plaintiff.

## V.    All Doubts Must Be Resolved in Favor of Remand

The removal statute must be strictly construed, and "all doubts as to the propriety of removal are resolved in favor of remand." *Coyne*, 183 F.3d at 493. UPS Air cannot meet its burden of establishing diversity jurisdiction when its own lengthy record contradicts its current

position. Here, there is a volume of evidence spanning decades of FAA filings, federal court admissions, issued certificates, corporate publications, job postings, and an organizational hierarchy, all pointing to Louisville, thereby requiring resolution in favor of remand.

## VI.    Removal Was Independently Improper Under the Forum Defendant Rule

Finally, because UPS Air is a citizen of Kentucky for purposes of diversity jurisdiction, complete diversity is not the only barrier to this Court's jurisdiction. Under the removal statute, "A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). This forum-defendant rule prevents the removal of a lawsuit where there is otherwise complete diversity if one of the defendants is from the state where the suit is filed. Here, UPS Air is a citizen of Kentucky, so it cannot remove from Kentucky state court based on diversity of citizenship.

**CONCLUSION**

Diversity jurisdiction does not exist, and therefore this case must be remanded. Permitting UPS Air to claim Georgia citizenship in these circumstances would reward jurisdictional manipulation and result in a flood of crash-related litigation being removed to this Court when it properly belongs in the state courts of Jefferson County. The Court should grant Plaintiffs' motion.

Respectfully submitted,

*/s/ Burt A. Stinson*
Michael P. Abate
Burt A. (Chuck) Stinson
Kaplan Johnson Abate & Bird LLP
710 West Main Street, 4th Floor
Louisville, KY 40202
(502) 416-1630
mabate@kaplanjohnsonlaw.com
cstinson@kaplanjohnsonlaw.com

15

Sam Aguiar
Jonathan B. Hollan
Sam Aguiar Injury Lawyers PLLC
1900 Plantside Drive
Louisville, KY 40299
(502) 813-8890
sam@kylawoffice.com
jhollan@kylawoffice.com

Robert A. Clifford*
Kevin P. Durkin*
Bradley M. Cosgrove*
Tracy A. Brammeier*
Charles R. Haskins*
John V. Kalantzis*
Julia C. Brosnahan*
Clifford Law Office PC
120 LaSalle Street, Suite 3600
Chicago, IL 60602
(312) 899-9090
* *Pro hac vice forthcoming*

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2026, a copy of the foregoing was served on all counsel of record via the Court's CM/ECF filing system.

/s/ Burt A. Stinson

16