# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

| | |
|---|---|
| CARL WHORTON AND RACHEL WILLIS, AS CO-ADMINISTRATORS OF THE ESTATE OF ELLA WHORTON, | *Electronically Filed* |
| | **Case No. 3:26-cv-00006-DJH-CHL** |
| CARL WHORTON AS FATHER AND NEXT FRIEND OF A.W., A MINOR, | |
| RACHEL WILLIS, AS GUARDIAN AND NEXT FRIEND OF J.N., A MINOR, | |
| -and- | |
| GLINDA PHILLIPS, AS GUARDIAN AND NEXT FRIEND OF S.Z., A MINOR, | |
| Plaintiffs, | |
| v. | |
| UNITED PARCEL SERVICE, INC.; UNITED PARCEL SERVICE CO. (AIR); GENERAL ELECTRIC COMPANY; THE BOEING COMPANY; and VT SAN ANTONIO AEROSPACE, INC., | |
| Defendants. | |

## RESPONSE OF UPS CO. TO PLAINTIFFS' MOTION TO REMAND

Defendant United Parcel Service Co. ("UPS Co.") (incorrectly identified in the case caption as United Parcel Service Co. (Air)), by counsel, files this response in opposition to Plaintiffs' Motion to Remand (D.N. 57), and states as follows:

## INTRODUCTION

On January 5, 2026, UPS Co. removed this action to this Court pursuant to 28 U.S.C. § 1441(b) and 28 U.S.C. § 1332(a) based on diversity of citizenship. Plaintiffs' sole argument in support of its motion to remand is that UPS Co. should be considered a citizen of Kentucky for purposes of remand, as its principal place of business is allegedly in Kentucky and not Georgia. This Court, however, has already ruled that the principal place of business of UPS Co. is Atlanta, Georgia. *See DeVore v. United Parcel Serv. Co. (Air),* No. 3:21-CV-478-DJH, 2023 WL 2658357, at *3-5 (W.D. Ky. Mar. 13, 2023). As a result, Plaintiffs' motion to remand should be denied.

Plaintiffs claim that this Court erred in *DeVore*. Plaintiffs' arguments and evidence in this regard are remarkably similar to those previously rejected by this Court in 2023 when DeVore filed a Motion to Alter or Amend Judgment arguing that the Court erred in its denial of DeVore's motion to remand. *See DeVore*, 2023 WL 2658357 at *1.

Plaintiffs make the same mistake in their motion to remand that the plaintiffs made in *DeVore*. Their brief focuses almost exclusively on where UPS Co. conducts its day-to-day operations. As the Supreme Court made clear in *Hertz Corp. v. Friend*, 559 U.S. 77 (2010), however, a corporation's principal place of business is the location of its "nerve center" -- where the directors responsible for overseeing the entire enterprise are located and the seat where the highest levels of decision-making are conducted.

When the *Hertz* test is correctly applied to the evidence before the Court, it is clear that Atlanta, Georgia, remains the nerve center and principal place of business of UPS Co. Accordingly, there is complete diversity of citizenship between the parties, and this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

2

## ARGUMENT

### I.  THIS COURT'S EXERCISE OF JURISDICTION IS PROPER

Pursuant to 28 U.S.C. § 1441(a), a defendant may remove any civil action "of which the district courts of the United States have original jurisdiction." When the removal is based on diversity of citizenship, removal is proper where "all parties on one side of the litigation are of a different citizenship from all parties on the other side of the litigation," and the amount in controversy exceeds $75,000. *See Coyne v. Am. Tobacco Co.,* 183 F.3d 488, 492 (6th Cir. 1999) (quoting *SHR Ltd. P'ship v. Braun*, 888 F.2d 455, 456 (6th Cir. 1989)); *see also* 28 U.S.C. § 1332(a).

Within 30 days after removal, a plaintiff may challenge the court's exercise of jurisdiction through a motion to remand. 28 U.S.C. § 1447(c). When considering a motion to remand, the court must examine whether the case was properly removed to federal court. *See Graves v. Standard Ins. Co.*, 66 F. Supp. 3d 920, 922 (W.D. Ky. 2014).

A corporation is considered a citizen of two locations, its place of incorporation and its principal place of business. 28 U.S.C. § 1332(c). UPS Co. is incorporated in the state of Delaware. *See* Exh. 1, Declaration of Dave Parrott at ¶ 3. UPS Co.'s nerve center and principal place of business is Atlanta, Georgia. *Id.* at 18.

Plaintiffs' argument for remand is based solely on the assertion that UPS Co.'s principal place of business is in Kentucky and not Georgia, making UPS Co. a non-diverse party with Plaintiffs. *See* D.N. 57 at 1-2. Plaintiffs do not challenge that the remaining defendants are diverse, or that the amount in controversy meets the threshold requirements of 28 U.S.C. § 1332(a). *See* D.N. 57.

3

## II.     UPS CO.'S NERVE CENTER IS LOCATED IN ATLANTA, GEORGIA

The United States Supreme Court has made clear that for purposes of determining diversity jurisdiction, a corporation's principal place of business is the location of its corporate "nerve center." *Hertz*, 559 U.S. at 78.  For UPS Co., that nerve center is Atlanta, Georgia.

"Under [28 U.S.C. §] 1441(b) diversity of citizenship must exist as to a party both at the time the state action is commenced and at the time the defendant files the petition for removal." *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 908 (6th Cir. 1993).  UPS Co.'s principal place of business was Atlanta, Georgia, when the Complaint was filed in state court and at the time of removal.  "[A] corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business."  28 U.S.C. § 1332(c)(1).  In *Hertz*, the Supreme Court held that a corporation's principal place of business "is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities."  559 U.S. at 78. That place is considered the "nerve center" of the corporation.  *Id.*

This Court has already ruled twice that Atlanta, Georgia, is the principal place of business of UPS Co.  In *DeVore v. United Parcel Serv. Co. (Air)*, No. 3:21-CV-478-DJH, 2022 WL 509119 at *1 (W.D. Ky. Feb. 18, 2022), DeVore filed suit against UPS Co. in Jefferson Circuit Court, and UPS Co. removed the action based on diversity jurisdiction.  DeVore filed a motion to remand, arguing that UPS Co.'s principal place of business was its Worldport hub in Louisville.  *Id.*  UPS Co. opposed the motion to remand, supplying a declaration by the company's chief financial officer establishing that its nerve center was in Georgia, and that diversity jurisdiction existed.  *Id*. at *2.  This Court ruled in favor of UPS Co. and denied the motion to remand.  *Id.*

4

A year later, DeVore filed a motion to alter or amend the judgment arguing that the Court erred in finding that UPS Co.'s principal place of business was Atlanta, Georgia. *DeVore v. United Parcel Serv. Co. (Air)*, No. 3:21-CV-478-DJH, 2023 WL 2658357 (W.D. Ky. Mar. 13, 2023). DeVore argued that the Court erred by conflating UPS Inc.'s contacts with Atlanta and UPS Co.'s contacts with Atlanta. *Id.* at *1. The Court rejected this argument, finding that UPS Co. and UPS Inc. can share the same principal place of business, and that the declaration of UPS Co.'s CFO established sufficient facts to support the finding. *Id*. at *3. DeVore also argued that the Court ignored UPS Co.'s Kentucky corporate filings and 10-K statements where UPS Co. stated that its headquarters is in Louisville. *Id*. at *4. The court rejected this argument, noting that the Supreme Court specifically rejected such corporate filings as a basis to determine a corporation's nerve center. *Id*. at *5

As the Supreme Court noted, the nerve center test is the easiest to apply when the corporation's activities are spread across the country and the globe. "Where a corporation is engaged in far-flung and varied activities which are carried on in different states, its principal place of business is the nerve center from which it radiates out to its constituent parts and from which its officers direct, control and coordinate all activities without regard to locale, in the furtherance of the corporate objective." *Hertz*, 559 U.S. at 89–90 (quoting *Scot Typewriter Co. v. Underwood Corp.,* 170 F. Supp. 862, 865 (S.D.N.Y. 1959)).

The facts underlying this Court's decision in *DeVore* have not substantially changed. UPS Co. is the quintessential embodiment of a corporation that engages in "far-flung and varied activities." As set forth in the Declaration of Dave Parrott, UPS Co. is part of an integrated transportation network across the world and is an indirect, wholly-owned subsidiary of United Parcel Service, Inc. ("UPS, Inc."). *See* Exh. 1 at ¶¶ 4, 10. UPS, Inc. is incorporated in Delaware

and has its principal place of business in Atlanta, Georgia, from where officers and directors exert ultimate authority over material business decisions undertaken by UPS Co.  *See* Exh. 1 at ¶¶ 4, 10-12.  Those material business decisions include procuring airplanes, approving collective bargaining agreements, undertaking non-aircraft capital expenditures exceeding $50,000, marketing campaigns, entering into material contracts, promoting district managers within UPS Co., contracting for flights not operated by UPS and approving aircraft routes that will be serviced.  *See* Exh. 1 at ¶ 11.

Consistent with this structure, the majority of UPS Co.'s officers and directors are in Georgia.  *See* D.N. 57, Exhibits 3, 4 (UPS Co.'s Georgia and Kentucky Secretary of State filings indicating that the listed officers and directors of the company have Atlanta, Georgia business addresses).  Additionally, UPS Co.'s President William Moore reports to Nando Cesarone, the President of U.S. Operations at UPS, Inc., who is based in Georgia.  *See* Exh. 1 at ¶ 9.

Nearly all of UPS Co.'s operational departments in Kentucky—including human resources, corporate security, labor, industrial engineering, automotive, plant engineering, legal, media relations, information technologies, and finance and accounting—report directly to their managers at UPS, Inc., not UPS Co.  *See* Exh. 1 at ¶ 12.  Accordingly, material decisions in those departments must be reviewed and approved by personnel at UPS, Inc. in Atlanta, Georgia.  *Id.*  Moreover, 25 of the 34 current officers of UPS Co., including its Chairman, Norm Brothers, who is based in Atlanta, Georgia, are employees or officers of United Parcel Service General Services Co., which is a management services company that provides individuals to manage the operations of subsidiaries of UPS, Inc.  *Id.* at ¶¶ 5-8.  United Parcel Service General Services Co. is a wholly-owned subsidiary of UPS, Inc., and is also located at 55 Glenlake Parkway NE, in Atlanta, Georgia.  *Id.*

Furthermore, where, as here, a parent company exercises substantive control over aspects of a subsidiary's business and directs its overall strategy, it weighs in favor of finding the parent company's location as the subsidiary's "nerve center" and principal place of business. For example, this Court recently relied on *Hertz* in finding that the principal place of business of a subsidiary defendant located in Kentucky (Yamamoto) was Japan, the location of its parent corporation, because the parent exercised ultimate authority over the subsidiary's activities in Kentucky. *Elliott v. Yamamoto FB Eng'g, Inc.*, No. 3:17-cv-456-DJH, 2018 WL 852375 at *1-3 (W.D. Ky. Feb. 13, 2018). The Court rejected the plaintiff's argument that Yamamoto was a citizen of Kentucky because it maintained its principal office in Louisville, Kentucky, necessitating remand for lack of diversity jurisdiction. *Id.* Instead, the Court concluded that Japan was Yamamoto's principal place of business because "corporate officers located at Yamamoto's parent-company headquarters in Japan 'exercise[d] ultimate authority over Yamamoto's activities in Louisville, Kentucky,' 'ma[d]e significant corporate decisions pertaining to [Yamamoto],' and 'direct[ed] and control[ed] Yamamoto's corporate policies.'" *Id.* at *3. That information, presented in a declaration submitted by Yamamoto's human resources manager, demonstrated that Japan was "the place of actual direction, control, and coordination for Yamamoto," vesting the Court with jurisdiction. *Id.*

The Declaration of Dave Parrott confirms that Atlanta, Georgia, is still the principal place of business of UPS Co. *See* Exhibit 1. If anything, Atlanta is even more closely engaged in the direction of the company since this Court made its ruling in *DeVore*. Accordingly, this Court should affirm its holding in *DeVore* and conclude the nerve center and principal place of business of UPS Co. is in Atlanta, Georgia.

### III.    PLAINTIFFS INCORRECTLY CONFLATE UPS CO.'S DAILY OPERATIONS WITH ITS NERVE CENTER

Plaintiffs argue that Kentucky is UPS Co.'s principal place of business because it is the location in the United States with the greatest concentration of UPS Co.'s day-to-day business operations.  For example, Plaintiffs point to a marketing statement, purportedly found on a UPS Co. website, inferring that UPS Co. employs a "small army" of "over 20,000 employees" at Worldport in Louisville.  D.N. 57 at 6.  Plaintiffs also rely upon an otherwise unidentified media source they term "Louisville Metro," which, when discussing developments involving a different UPS company, UPS Supply Chain Solutions, states that UPS Co. is the largest employer in Metro Louisville and that Louisville is "the center" of UPS Co.'s "worldwide air network."  *Id.* To the extent the Court finds such marketing and promotional materials relevant, it should be noted that the creation of this material is supervised by employees of UPS General Services Co. and ultimately approved by the Communications Editorial Director in Atlanta, Georgia, and the President of UPS Global Communications, who is also based in Atlanta.  *See* Declaration of Richard Bittner, Jr., attached as Exhibit 2, ¶¶ 7-13.

Even more fatal to Plaintiffs' argument, the United States Supreme Court thoroughly rejected this "daily operations" argument in *Hertz*, 559 U.S. at 82.  Prior to *Hertz*, most circuit courts examined a corporation's principal place of business by "determining the amount of a corporation's business activity State by State" and then choosing the state where the "amount of activity" is "significantly larger" or "substantially predominates."  *Id*.  The Supreme Court found this standard to be unworkable and replaced it with the "nerve center" test.  *Id*.

Even if the day-to-day operations at Worldport were relevant to the determination of UPS Co.'s nerve center, most of the "facts" Plaintiffs rely on are incorrect.  UPS Co.'s global air operations are supported by air hubs across the United States and internationally, and in addition

to Louisville, UPS Co. has large domestic hubs in Anchorage, Alaska; and Ontario, California. *See* Exhibit 1 at ¶ 13. In addition to Louisville, UPS Co.'s flight crews are also domiciled in Anchorage, Ontario and Miami and UPS Co. employs Chief Pilots and System Chief Pilots based at those locations. *Id*. at ¶ 14.

Moreover, UPS Co. does not own or operate the UPS Worldport ("Worldport") facility. *Id*. at ¶ 15. Rather, Worldport is owned by UPS Worldwide Forwarding, Inc. and is leased to United Parcel Service Inc. ("UPS Ohio"), which is responsible for operations and site and facility maintenance at Worldport. *Id*. The employees who work in Worldport unloading, sorting and otherwise handling packages are employed by UPS Ohio. *Id*. at ¶¶ 16-17. UPS Ohio is incorporated in Ohio with its principal place of business in Georgia. *Id.* at ¶ 15. UPS Ohio is the corporate entity responsible for the UPS branded small package operations throughout the United States, including the pick-up and delivery of the packages transported by air by UPS within the United States. *Id.* at ¶ 16. Of the over 14,000 employees who work at Worldport, over 13,000 are employees of UPS Ohio and less than 400 are employees of UPS Co. *Id.* at ¶ 17.

Plaintiffs attempt to fill this gap by claiming that UPS Co. has an "autonomous management body working exclusively from Louisville," and that these few executives constitute the "nerve center" of operations. D.N. 57 at 6. Plaintiffs, however, have fallen into the trap that the Supreme Court warned about in *Hertz*. The Supreme Court noted that in applying the nerve center test, the court should consider that some directors or officers may work remotely, stating:

> For example, in this era of telecommuting, some corporations may divide their command and coordinating functions among officers who work at several different locations, perhaps communicating over the Internet. That said, our test nonetheless points courts in a single direction, toward the center of overall direction, control, and coordination.

*Id*. at 95-96.

Plaintiffs' argument regarding the location of corporate officers and how a company is managed is similar to the argument rejected in *Pegasus Indus. v. Martinrea Heavy Stampings, Inc.,* No. 3:16-cv-00024-GFVT, 2016 WL 3043143, at *1-3 (E.D. Ky. May 27, 2016). In *Pegasus Industries*, the court denied a motion to remand based on its finding that defendant Martinrea was not a citizen of Kentucky, despite having its principal business center there, because it was controlled by its ultimate corporate parent in Ontario, Canada. *Id.* The court found that Martinrea had employees and conducted its business in Kentucky, but that "significant corporate policy and oversight decisions are made from Vaughan, Ontario," and thus Ontario was the nerve center under *Hertz. Id.* at *3. Key to the court's analysis was that corporate personnel with ultimate supervision over Martinrea were located in Ontario. *Id.* at *2-3. The court further reasoned that the fact that a subsidiary is "incorporated separately from its parent corporations" is "immaterial" to the nerve center analysis because "nothing prevents the subsidiary from maintaining the same principal place of business as its corporate parent if that location is truly the subsidiary's nerve center." *Id.* at *3.

Plaintiffs' approach, here, to "cherry-pick" certain individual officers or discrete business functions and turn that into its own nerve-center, has been rejected by the Supreme Court. UPS Co. conducts a large amount of its operations in Louisville, but that does not make it the company's "nerve center." UPS Co.'s operations are far-flung across not only the United States, but the world. The fact that some executives work in Louisville does not change the fact that all major corporate decisions are made or reviewed in Atlanta, Georgia. Exhibit 1 at ¶¶ 10-12.

## IV.   PLAINTIFFS IMPROPERLY CONFLATE "OPERATIONAL CONTROL" UNDER THE FEDERAL AVIATION REGULATIONS WITH THE LOCATION OF UPS CO.'S NERVE CENTER

Plaintiffs argue that because UPS Co. is an air carrier holding an operating certificate issued pursuant to 14 C.F.R. Part 121, and certain flight-related operations and responsible officers work in Louisville, that Kentucky is therefore UPS Co.'s principal place of business.

10

Plaintiffs' argument, however, conflates the question of "operational control" of the airline for purposes of the Federal Aviation Regulations with the location of UPS Co.'s nerve center for purposes of diversity jurisdiction.

Pursuant to 14 C.F.R. Part 121, an airline is required to exercise "operational control" over its aircraft when they are involved in flight operations.  As defined in 14 C.F.R. § 1.1, "[o]*perational control,* with respect to a flight, means the exercise of authority over initiating, conducting or terminating a flight."  The obligation to maintain operational control is "shared by the pilot in command and the aircraft dispatcher," which are "jointly responsible for the preflight planning, delay, and dispatch release of a flight in compliance with this chapter and operations specifications."  14 C.F.R. § 121.533.  The aircraft dispatcher is responsible for monitoring the progress of each flight, issuing necessary information for the safety of the flight, and cancelling or redispatching a flight if, in his opinion or the opinion of the pilot in command, the flight cannot operate or continue to operate safely as planned or released.  *Id.* at § 121.533(c).  In addition, "[e]ach pilot in command of an aircraft is, during flight time, in command of the aircraft and crew and is responsible for the safety of the passengers, crewmembers, cargo, and airplane."  *Id.* at § 121.533(d).  The pilot in command "has full control and authority in the operation of the aircraft, without limitation, over other crewmembers and their duties during flight time, whether or not he holds valid certificates authorizing him to perform the duties of those crewmembers."  § 121.533(e).

In furtherance of their misplaced focus on daily operations, Plaintiffs cite 14 C.F.R. § 5.25(a) and the duties of the airline's "accountable executive."  Part 5 of the Federal Aviation Regulations is titled "Safety Management Systems" and Section 5.25 falls under Subpart B ("Safety Policy") and is titled "Designation and responsibilities of required safety management

11

personnel." Subpart (a) of 14 C.F.R. § 5.25 requires that an "accountable executive" have the control required for the airline to conduct its operations. Subparts (b) and (c) of 14 C.F.R. 5.25 further this safety focus by requiring that the airline's accountable executive ensure that the airline has a safety policy that is regularly reviewed and communicated throughout the company and that its safety management system ("SMS") is properly implemented, is performing across all pertinent areas, and is regularly reviewed and improved as needed. Further, this person must designate management personnel to coordinate, implement, maintain, and integrate the SMS throughout the airline, facilitate hazard identification and safety risk analyses, monitor effectiveness of safety risk controls, ensure safety promotion throughout the airline, and regularly report to the accountable executive on the performance of the safety management system.

Accordingly, where the accountable executive is based has nothing to do with the location of the corporate nerve center under the *Hertz* test. The accountable executive is responsible for operational safety, the corporate nerve center in Atlanta is responsible for major business decisions. *See, e.g.,* Exhibit 1 at ¶¶ 9-12. While the former is part and parcel of Plaintiffs' focus on daily operations, the latter is what governs corporate citizenship under *Hertz*.

While flight operations are an important part of any airline's business, the management of the company extends far beyond those concepts, and encompasses labor relations, corporate finance, accounting and taxation, non-flight personnel management, capital cost and improvement decisions, strategic planning for growing or shrinking the company, decisions about what markets to serve, what contracts to enter into, what other entities to enter into strategic partnerships with, and how UPS Co. will interface with other parts of the UPS package delivery network. It is these decisions, based in Atlanta, Georgia, and not the day-to-day

12

operational decisions that are dispersed across the globe, which constitute the "nerve center" for purposes of diversity jurisdiction.

## V.    MEDIA STATEMENTS AND PROMOTONAL MATERIALS DO NOT ESTABLISH THE LOCATION OF A COMPANY'S NERVE CENTER

Plaintiffs point to select media reports, promotional materials and other documents where UPS Co. has indicated that its "headquarters" is in Louisville, Kentucky.  *See* D.N. 57 at 5-6. For example, Plaintiffs claim that UPS Co. made statements on its website describing "its Louisville workforce as a 'small army' of 'over 20,000 employees,'" and that press accounts state that UPS is "the largest employer in Metro Louisville, with more than 25,000 employees working in air, ground and supply chain operations."  *Id.* at 6. In addition, Plaintiffs note that UPS Co.'s jobs page refers to the company's Louisville headquarters as "the center of our worldwide air network."  *Id.*

Similar claims that these types of promotional statements establish a company's principal place of business have been repeatedly rejected by the courts.  For example, in *Nation v. Atlas Techs., LLC*, 2019 WL 1748428, at \*2 (E.D. Mich. Apr. 19, 2019), the plaintiff pointed to media statements, such as the defendant's profile page on BusinessInsider.com, which stated that it was "headquartered in Fenton, MI" and that Bloomberg.com listed a 3100 Copper Avenue, Fenton, Michigan address.  *Id.*  The court found that none of this evidence established the defendant's present nerve center, noting that "the websites do not purport to identify Productivity's 'principal place of business' as that phrase is used in § 1332.  One website simply lists the Fenton, Michigan address.  And while the other does say that Productivity is 'headquartered' there, that, again, is not necessarily the nerve center."  *Id.*

Similarly, in *Lawson v. SWBC Mortgage Corp.*, the court noted that "[n]either advertising slogans nor unsupported internet information are proof of corporate citizenship, and the fact that

13

a corporation conducts business in a state does not establish the citizenship of the corporation." No. 3:21-00197, 2021 WL 5864004, at *3 (M.D. Tenn. Sept. 15, 2021), *report and recommendation adopted*, No. 3:21-CV-00197, 2021 WL 4962762 (M.D. Tenn. Oct. 26, 2021); *see also Volkert, Inc. v. Financial Tech. Corp.*, No. 3:18-1344, 2019 WL 7576350, at *3 (M.D. Tenn. Dec. 23, 2019), *report and recommendation adopted*, No. 3:18-CV-01344, 2020 WL 134227 (M.D. Tenn. Jan. 13, 2020) ("Despite [defendant] publicly presenting itself as a Tennessee corporation, there is no indication that the company's activities were occurring anywhere other than within the state of Alabama at the time the complaint was filed, which means that [defendant]'s nerve center was located in Alabama."); and *Hertz*, 559 U.S. at 96 (2010) ("For example, if the bulk of a company's business activities visible to the public take place in New Jersey, while its top officers direct those activities just across the river in New York, the 'principal place of business' is New York.").

Based on the foregoing principles, Plaintiffs' argument fails for several reasons. First, the term "headquarters," particularly when used colloquially, is not synonymous with "nerve center." As the Supreme Court made clear in *Hertz*, the fact that a corporation denominates a city as its "headquarters" for purposes of advertising, public relations, or even in SEC filings, is not determinative of whether that location is the corporation's "nerve center." *Hertz,* 559 U.S. at 93. The putative headquarters only becomes the company's principal place of business if it is "the actual center of direction, control, and coordination, *i.e.,* the 'nerve center,' and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)." *Id.* In addition, UPS Co. does not actually own or operate the Worldport facility, and most of the employees there are not UPS Co. employees. *See* Exhibit 1 at ¶¶ 15-17.

14

Where, as here, UPS Co. has submitted evidence establishing its nerve center in Atlanta, Georgia, the statements Plaintiffs rely upon should be given little or no weight.

## VI.   CORPORATE FILINGS DO NOT ESTABLISH THE LOCATION OF A COMPANY'S NERVE CENTER

Plaintiffs point to filings made by UPS Co. with the Kentucky and Georgia Secretaries of State wherein Louisville is indicated as the headquarters of UPS Co. *See* D.N. 57 at 4.  The Supreme Court, however, explicitly rejected this approach to determining a company's principal place of business:

> And when faced with such a challenge, we reject suggestions such as, for example, the one made by petitioner that the mere filing of a form like the Securities and Exchange Commission's Form 10–K listing a corporation's "principal executive offices" would, without more, be sufficient proof to establish a corporation's "nerve center."

*Hertz,* 559 U.S. at 97.

The Supreme Court's guidance in *Hertz* has been followed extensively in the Sixth Circuit.  For example, in *Elliott*, the plaintiff submitted a copy of the defendant's annual report—filed with the Kentucky Secretary of State—which listed Kentucky as the organization's principal office address and argued that the defendant was therefore a citizen of Kentucky.  2018 WL 852375 at *2-3.  This Court rejected this argument and found that the defendant was not a citizen of Kentucky, relying instead on the defendant's own declaration, which explained that corporate officers located in another country exercised ultimate authority over its Kentucky operations, made significant corporate decisions, and directed and controlled its corporate policies. *Id.*; *see also McGill v. Foster*, No. 1:23-cv-01134, 2023 WL 6644090, at *2 (W.D. Tenn. Oct. 12, 2023) (finding corporation's filing with the Tennessee Secretary of State listing a Tennessee address as its "principal office address" not conclusive proof of the location of party's "nerve center" when affidavit showed its business is controlled and directed elsewhere); *Bauer Found. Corp. v. IMI Tennessee, Inc.*, No. 3:19-cv-00849, 2019 WL 6273253, at *4–5 (M.D.

15

Tenn. Nov. 25, 2019) (noting that corporate filings with the secretary of state are not dispositive and finding that affidavit satisfied party's burden of showing by a preponderance of the evidence that the defendant's nerve center and principal place of business is actually elsewhere).

Finally, in *Pegasus Industries*, the United States District Court for the Eastern District of Kentucky noted that the mailing address listed as a corporation's principal office in its Certificate of Authority filed with the Kentucky Secretary of State is not conclusive evidence of the corporation's nerve center. *Pegasus Industries,* 2016 WL 3043143 at *2 (citing *Hertz*, 559 U.S. at 97). Tellingly, the court declined to rely on the corporation's representation in its Certificate of Authority when determining citizenship for diversity jurisdiction, in part because the filing contained additional information suggesting that the corporation was directed and controlled from a different location—for example, the party's listed officers and directors at the time of filing both had business addresses in another place.

As in *DeVore*, UPS Co. has supplied a detailed affidavit establishing Atlanta, Georgia, as the UPS Co.'s nerve center. In fact, those same filings indicate that since 2021, the listed officers and directors actually work in Atlanta, Georgia. *See, e.g.*, D.N. 57, Exhibits 3-4. The designation of Louisville as the address for UPS Co.'s headquarters in corporate filings was never intended to, and does not, change the fact that the strategic direction and oversight of UPS Co. occurs in Atlanta. Accordingly, the motion to remand should be denied.

## VII.   THE FEW COURT FILINGS RELIED ON BY PLAINTIFFS DO NOT ALTER THE LOCATION OF UPS CO.'S NERVE CENTER IN ATLANTA, GEORGIA

Plaintiffs point to four court filings between 2016 and 2025 in which UPS Co. has indicated that its principal place of business was in Louisville, Kentucky. Two of those cases predate this Court's decision in *DeVore,* and this Court previously rejected arguments that

16

matters filed prior to *DeVore* had an impact on its factual finding that Atlanta is UPS Co.'s nerve center.  *See DeVore,* 2023 WL 2658357 at *4-5.

With regard to the other two cases, in *Noe v. United Parcel Service Co.*, 3:25-cv-00566 (W.D. Ky. Sept. 5, 2025), UPS Co. filed a statement that "[C]omplete diversity exists … because Plaintiff is a citizen of Indiana and [UPS Air] is a citizen of Delaware and Kentucky."  D.N. 57 at 1.  UPS Co. admits that this filing is incorrect, and Atlanta, Georgia, is UPS Co.'s principal place of business.  *See* Exh. 1 at ¶ 18.  It is important to note that this is not a situation where UPS Co. "changed" its principal place of business to "manipulate" diversity jurisdiction.  In *Noe*, whether UPS Co.'s principal place of business was in Atlanta or Louisville, diversity would still exist, as the plaintiff was a citizen of Indiana.  *See* Plaintiffs' Exhibit 1.

Similarly, UPS Co. filed an answer in *Matheson Flight Extenders, Inc. v. United Parcel Service Co.*, 2:24-ap-02141 (E.D. Cal. Bankr. Aug. 2024), where it incorrectly admitted that its principal place of business was in Louisville, Kentucky.  D.N. 57 at 5.  The *Matheson* case, however, was a bankruptcy matter and the court exercised original jurisdiction over the case pursuant to 28 U.S.C. § 1334(b).  *See* Plaintiffs' Exhibit 7.  UPS Co.'s principal place of business was not relevant to jurisdiction and, once again, this is not an example of a company changing its principal pace of business to defeat or create jurisdiction where it otherwise does not exist.

As the Supreme Court held in *Hertz*, a statement by a corporation as to its principal place of business is not determinative of the question, which is dependent solely on the facts concerning how the company is overseen and directed.  *See Hertz,* 559 U.S. at 96-97.  In addition, it must be kept in mind that the Supreme Court defined "jurisdictional manipulation" as a claim by a corporation that its nerve center is "nothing more than a mail drop box, a bare office

17

with a computer, or the location of an annual executive retreat . . . ."  *Hertz*, 559 U.S. at 97.

Atlanta is indisputably not just a "mail drop" or similar front.  Atlanta is where most of the

company's top officers work and the location where the business of UPS Co. is directed.  *See*

Exhibit 1 at 5, 9-16.

Plaintiffs also claim that the statements made in these unrelated cases are judicial

admissions and are binding on UPS Co.  D.N. 57 at 3.  This argument is wrong.  It is well

established in the Sixth Circuit that at most, pleadings in a prior case can be an evidentiary

admission.  *Cadle Co. II v. Gasbusters Prod. I Ltd. P'ship*, 441 F. App'x 310, 312–13 (6th Cir.

2011).  In order to constitute a binding judicial admission, the statement must be a formal

admission made in the present matter.  *Id*.

Evidentiary admissions "are mere evidence, are not conclusive, and may be contradicted

by other evidence."  *In re Wood*, No. 18-32555, 2021 WL 3640612, at *10 (Bankr. W.D. Ky.

Aug. 17, 2021).  The statements made in these cases were not an attempt to manipulate the

court's jurisdiction and, in fact, had no effect on it.  UPS Co. has supplied substantial evidence

showing that its nerve center is in Atlanta, Georga.  *See* Exhibit 1.  Accordingly, this Court

should, as it did in *DeVore*, find that the preponderance of the evidence supports reaffirming that

UPS Co.'s principal place of business is in Atlanta, Georgia.  *DeVore,* 2023 WL 2658357 at *4

(W.D. Ky. Mar. 13, 2023).

### VIII.   CONCLUSION

In *DeVore*, this Court considered – and rejected – the concepts underlying Plaintiffs'

remand motion.  The Court held that, consistent with the test established by the Supreme Court

in *Hertz*, UPS Co.'s "nerve center" is located in Atlanta, Georgia.  The evidence presented by the

parties here confirms and reinforces that result.  Decisions related to UPS Co.'s corporate

policies and management must be reviewed and approved by corporate officers of UPS, Inc.

located in Atlanta, Georgia.  This oversight extends broadly to decisions to procure airplanes, approve collective bargaining agreements, undertake non-aircraft capital expenditures exceeding $50,000, develop marketing campaigns, enter into material contracts, promote district managers within UPS Co., contract flights not operated by UPS Co., and approve aircraft routes that will be serviced.  *See* Exhibit 1 at ¶ 11.  In addition, nearly all of UPS Co.'s business department heads report directly to managers of UPS, Inc. located in Atlanta, Georgia. These business departments include human resources, corporate security, labor, industrial engineering, automotive, plant engineering, legal, media relations, information technologies, and finance and accounting.  Exhibit 1 at ¶ 12.  In essence, the entire strategic direction of the company is performed from Atlanta, Georgia.  Accordingly, UPS Co. respectfully requests that Plaintiffs' Motion to Remand be denied.

Respectfully submitted this 25th day of February, 2026,

/s/ James T. Blaine Lewis
James T. Blaine Lewis
Shane O'Bryan
William G. Carroll
**MCBRAYER PLLC**
500 W. Jefferson Street, Suite 2400
Louisville, Kentucky 40202
Phone: (502) 327-5400
blewis@mcbrayerfirm.com
sobryan@mcbrayerfirm.com
wcarroll@mcbrayerfirm.com

*and*

19

Mark A. Dombroff
Morgan W. Campbell
Mark E. McKinnon
James A. Eastwood
**FOX ROTHSCHILD LLP**
2020 K Street N.W., Suite 500
Washington, DC 20006
Phone: (202) 461-3102
MDombroff@foxrothschild.com
MCampbell@foxrothschild.com
MMcKinnon@foxrothschild.com
JEastwood@foxrothschild.com
*Counsel for UPS Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of February, 2026, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to all counsel of record.

*/s/ James T. Blaine Lewis*
*Counsel for UPS Defendants*

4922-0781-3522, v. 1