**United States District Court**
**Western District of Kentucky**
**Louisville Division**

| | |
|---|---|
| Carl Whorton and Rachel Willis, as Co-Administrators of the Estate of Ella Whorton, Carl Whorton as Father and Next Friend of A.W. Whorton, a minor, Rachel Willis, as Guardian and Next Friend of J.N., a minor, and Glinda Phillips, as Guardian and Next Friend of S.Z., a minor | Case No. 3:26-cv-00006-DJH |
| Plaintiffs, | **Hearing Requested** |
| v. | |
| United Parcel Service, Inc., United Parcel Service Co. (Air), General Electric Company, The Boeing Company, and VT San Antonio Aerospace, Inc. | |
| Defendants. | |

**REPLY IN SUPPORT OF MOTION TO REMAND**

UPS Air's response to the motion to remand shows that it's willing to say just about anything to litigate in the forum of its choice. Most of the time, it has no trouble telling federal courts, state governments, federal regulators, job applicants, the media, and everyone who visits its company website that its principal place of business is Louisville, Kentucky. But when being a citizen of this state is inconvenient—because it would require UPS Air to face a Louisville jury to answer for the fatal crash that occurred here in November 2025—UPS Air suddenly claims to be based in Georgia. If that's not "jurisdictional manipulation," it's hard to imagine what is.

UPS Air has not come close to meeting its burden to prove, by a preponderance of the evidence, that complete diversity exists. That's true for two reasons. One, its only evidence is a

1

pair of self-serving declarations whose factual assertions are all either irrelevant, contradicted by the record and UPS Air's own prior sworn statements, or rest on the faulty assumption that a subsidiary can rely on the citizenship of its parent to defeat diversity. Two, it mischaracterizes FAA regulations in an attempt to claim that its president and "accountable executive," Bill Moore, doesn't actually run the company—a fact that, if true, would mean UPS Air is actively violating federal law. Because UPS Air cannot meet its burden, the Court should grant the motion for remand.[1]

## I.      UPS Air's Declarations Cannot Satisfy Its Burden of Proof.

UPS Air opens its brief by trying to flip the burden of proof with a sleight of hand. As this Court well knows, "the party invoking federal jurisdiction has the burden to prove that jurisdiction." *Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co., Ltd.*, 807 F.3d 806, 810 (6th Cir. 2015). Here, that's UPS Air. And yet, UPS Air appears to suggest that it's actually Plaintiffs' job to establish a lack of jurisdiction by proving that this Court "erred in *DeVore*" when it found that UPS Air was a Georgia citizen. Response Br. at 2.

That argument is wrong. Plaintiffs do not need—and do not wish—to question the Court's findings in *DeVore* because the record in this case is different from the record in that one. In *DeVore*, UPS Air defeated remand by asserting that its former representations that it was a Kentucky citizen were "outdated." *DeVore v. United Parcel Serv. Co. (Air)*, 2022 WL 509119, at *1 (W.D. Ky. Feb. 18, 2022). But here, it cannot—and does not—make that claim. That's because, in the years since *DeVore*, UPS Air has continued to represent in every public forum except this Court that it is still headquartered in Kentucky. In *DeVore*, UPS Air's CFO-declarant

---

[1] UPS Air asserts that the name assigned to it in the case caption, United Parcel Service Co. (Air), is incorrect. It offers no explanation for this assertion. And in any event, United Parcel Service Co. (Air) is the name the company registered with the Kentucky Secretary of State. *See* ECF No. 57-1, PageID.310.

stated that "all of UPS's current officers are located in Atlanta, Georgia." *Id.* at *1. But here, the new CFO's declaration doesn't say that. Instead, it identifies just one purported officer located in Atlanta. *Every other officer* identified in the record is located in Louisville, including the CFO-declarant himself, who relocated from Georgia to Kentucky upon accepting his CFO role at UPS Air. In *DeVore*, the plaintiff offered no evidence contradicting UPS Air's various nerve-center allegations. But here, the record squarely contradicts every relevant assertion UPS Air makes. In short, Plaintiffs don't need to argue "that this Court erred in *DeVore*," Response Br. at 2, because the records in the two cases are entirely different. And in this case, UPS Air has not met its burden.

### A.   UPS Air's Self-Serving Declarations Are Not Credible.

UPS Air consistently holds itself out as a Kentucky-based company. That's what it tells the public in the ordinary course of business. It's also what it tells federal courts and federal regulators. And dozens of sworn corporate filings submitted to state governments under penalty of perjury all tell the same story. And yet, UPS Air urges this Court to disregard all those statements in favor of an isolated, heavily lawyered declaration that takes a contrary position.

The Court should not indulge UPS Air's request. When a party submits a declaration that contradicts its "own previous sworn statement … without explaining the contradiction or attempting to resolve the disparity," the declaration must be either "stricken" or simply "ignored." *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012). The same goes for declarations that are contradicted by "copious evidence in the record." *Hoffner v. Bradshaw*, 622 F.3d 487, 500 (6th Cir. 2010) (holding a "self-serving affidavit carries little weight" given other, contradictory evidence). In every corporate filing in Kentucky and Georgia since 2016—including those filed after *DeVore*—UPS Air has stated under penalty of perjury that its principal place of business is 1400 North Hurstbourne Parkway, Louisville, KY. *See* ECF

3

No. 57-1, PageID.300, 307–32. And "copious evidence in the record", *Hoffner*, 622 F.3d at 500, shows that it has made, and continues to make, the same representation countless times in media statements, court pleadings, regulatory documents, job postings, and in the social media profiles of virtually all of its officers. *See* ECF No. 57-1, PageID.333–600. And yet, UPS Air asks the Court to ignore all of these public assertions of Kentucky citizenship and to adopt, instead, its self-serving declaration "without explaining the contradiction or attempting to resolve the disparity." *White*, 699 F.3d at 877.

Rather than attempt an explanation, UPS Air offers nothing but the glib assertion that corporate filings and media statements are not enough, on their own, to "establish the location of a company's nerve center." Response Br. at 13, 15 (emphasis omitted). But that argument misses the point. Plaintiffs do not have the burden to "establish" anything. The point is that UPS Air cannot satisfy *its* burden because the only evidence it offers is a self-serving declaration that contradicts all of its earlier sworn statements and other public representations. And because UPS Air has made no attempt to "explain[] the contradiction" or "resolve the disparity," the Court must disregard it. *White*, 699 F.3d at 877.

UPS Air's lack of explanation is what makes this case different from *DeVore*. In that case, UPS Air faced the same dilemma. But it claimed that the reason sworn statements in the past contradicted UPS Air's new litigating position is that those old statements were "outdated." *DeVore*, 2022 WL 509119, at *1. Here, UPS Air doesn't even attempt that argument (or any other argument). And for good reason—as recently as February 4, 2026, just a few weeks after removing to this Court based on claims of Georgia citizenship, UPS Air yet again told the

4

Georgia Secretary of State, under penalty of perjury[2], that its principal place of business is Louisville, Kentucky. **Exhibit 18**, Georgia Secretary of State Annual Registration (2026).

It is true that neither corporate filings, nor in-court admissions, nor media statements, nor federal regulatory filings, nor public-facing advertisements, nor hundreds and hundreds of job listings are enough, on their own, to prove where a company's nerve center is located. But when a mountain of public representations by a company over the course of decades all tell the same story—that UPS Air is headquartered in Louisville—and the only outlier is a pair of made-for-litigation affidavits designed to avoid a Louisville jury, there's at least reason to doubt the declaration's credibility. And in a removal case, "[a]ll doubt should be resolved in favor of remand." *Hahn v. State Farm Fire & Cas. Co.*, 2025 WL 3124457, at *2 (W.D. Ky. Nov. 7, 2025) (citing *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 550 (6th Cir. 2006)).

> **B.      All of the Declaration's Factual Assertions Are Either Irrelevant to the "Nerve Center" Analysis or Are Demonstrably False.**

There are two other reasons the Court should disregard the declaration of UPS Air's CFO. One is that many of his factual assertions are demonstrably untrue. The other is that any remaining assertions, even if true, are irrelevant to the "nerve center" analysis. A self-serving declaration filled with false and irrelevant information cannot satisfy the burden of proof.

> **1.      Irrelevant Assertions.**

Unlike in *DeVore*, UPS Air cannot truthfully assert in this case that "all of UPS Co.'s current officers are located in Atlanta, Georgia." *DeVore v. United Parcel Serv. Co. (Air)*, 2023 WL 2658357, at *3 (W.D. Ky. Mar. 13, 2023) (cleaned up). So, as a workaround, its declarant, Dave Parrott, claims that *some* of its officers—25 out of 34—are also "employees or officers" of

---

[2] *See* Ga. Code Ann. § 16-10-20 (making it a felony to include false statements in records submitted to a state agency).

a another UPS entity, "United Parcel Services General Services Co.," which is located in "Atlanta, Georgia." ECF No. 65-1, Declaration of Dave Parrott ("Parrot Decl.") ¶¶ 5–7. So, Parrott contends, UPS Air's nerve center must be in Georgia because some of its officers also work for a different UPS entity based there.

That is a ridiculous position. Nothing in *Hertz Corp. v. Friend*, 559 U.S. 77 (2010) says that a company's nerve center is determined by the location of another company that also happens to employ some of its officers. Rather, the principal place of business is "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id.* at 92–93. So what matters is the location of the officers *themselves*, not the location of a separate company they also work for.

Through that lens, there's no question that Louisville is the site of UPS Air's nerve center. The only "officer" UPS Air identifies who is "based in Atlanta" is Norm Brothers, who is listed as a "secretary" in the company's corporate filings. Parrott Decl. ¶ 5; ECF No. 57-1, PageID.320. Every other UPS Air officer identified in the record is based in Louisville. That includes UPS Air's own declarant, CFO Dave Parrott. **Exhibit 19**, LinkedIn Profiles of Additional UPS Air Executives. Here's a sampling of the UPS Air officers located in Louisville:

- Bill Moore – President and CEO

- David Parrott – CFO

- Houston Mills – President of Flight Operations

- Alp Kiyabasi – President of Information Technology

- Troy McCullum – President of Aircraft Maintenance & Engineering

- Sharnika Glenn – VP of Human Resources

- John Veentjer – VP of Labor Relations

- Jason Foote – VP of Corporate Strategy

- Michael Francesconi – VP and Chief Counsel

- Dave Smith – VP of Airline Safety

- Chris McCorkle – VP of Industrial Engineering

- Carey Kuhl – VP of Security

- Michelle Polk – Director of Global Communications

*See* ECF No. 57-1, PageID.407–24; **Exhibit 19**. Because the principal place of business is the place from which the officers themselves "direct, coordinate, and control" the company, *Hertz*, 559 U.S. at 92–93, the location of a separate company that also happens to pay those officers a salary is irrelevant. *Offill v. Cent. R.R. Co. of Indiana*, 791 F. Supp. 3d 787, 796–97 (S.D. Ohio 2025) (holding that the location of co-subsidiary is irrelevant to determining a company's nerve center).

Also irrelevant are Parrott's assertions that UPS Air's parent, UPS Inc., has approval authority over certain business decisions and that some (but not all) of its officers "report to" parent company managers. Parrott Decl. ¶¶ 9, 11–12. Under *Hertz*, a corporation's nerve center is the place where "*its officers* direct, control and coordinate all activities of the company." 559 U.S. at 90 (emphasis added). "The term 'its officers' refer[s] to the corporation's own officers. The subject in the phrase is the corporation, and 'its' officers is being used in the possessive form, referring to the officers of *that corporation*," *Celli v. Greenwich Ins. Co.*, 478 F. Supp. 3d 93, 96–97 (D. Mass. 2020) (quoting *Harrison v. Granite Bay Care, Inc.*, 811 F.3d 36, 40 (1st Cir. 2016)). Parent company managers who are not officers of the subsidiary corporation in question "are not to be considered in the nerve center analysis." *Id.* at 97.

Any other rule would make every subsidiary's "nerve center" identical with that of its parent—something Sixth Circuit case law expressly forbids. *Schwartz v. Elec. Data Sys., Inc.*, 913 F.2d 279, 283 (6th Cir. 1990) (holding that separately incorporated entities are "considered to have [their] own principal place[s] of business"). Of course, every corporate parent exerts some degree of control over its subsidiaries, but that corporate structure does not erase the "nerve center analysis," which is focused entirely on where *the subsidiary's officers* "direct, control, and coordinate company activities, not where the parent's officers exercise strategic oversight. *Offill*, 791 F. Supp. 3d at 799 ("nerve center" is where the subsidiary company's officers exercise "boots-on-the-ground" leadership, not where officers of an affiliate company "rubber stamp[]" the subsidiary's decisions). If the Supreme Court intended for a subsidiary's citizenship to automatically align with the location of its parent, then the nerve center analysis would be useless in a majority of situations.

Thus, even if it's true that UPS Air President Bill Moore "reports to" the Atlanta-based "Nando Cesarone, the Executive Vice President of UPS, Inc.," it is irrelevant. Parrott Decl. ¶ 9. The question under *Hertz* is: where do the officers of UPS Air "direct, control, and coordinate" UPS Air activities, Louisville or Atlanta? Nando Cesarone is not an officer of UPS Air, so his location does not matter. What does matter is the fact that every UPS Air officer identified in the record, with just one exception, is in Louisville.

Finally, Parrott's assertion that UPS Air "does not own" the UPS Worldport facility at the Louisville airport is irrelevant. Plaintiffs do not contend that Worldport is the company's principal place of business. Rather, its nerve center is the sprawling office building at 1400 North Hurstbourne Parkway, expressly identified as UPS Air's corporate headquarters in a decade's

worth of Secretary of State filings, multiple in-court admissions, and over 500 hundred job listings across five continents. ECF No. 57-1, PageID.298–379; 392–406.

### 2. False Assertions.

UPS Air's brief and declaration are also laden with clear inaccuracies. They claim that effectively all of UPS Air's business decisions are made by Atlanta-based leadership. Examples include decisions affecting "human resources, corporate security, labor, industrial engineering, automotive, plant engineering, legal, media relations, information technologies, and finance and accounting." Parrott Decl. ¶ 12. Oddly, it doesn't bother to identify *who* in Atlanta is responsible for these areas of corporate decision-making. Of course, to the extent Atlanta-based managers are not officers of UPS Air, but instead are parent-company managers with rubber-stamp approval authority, then, as noted above, this is all irrelevant. But if UPS Air means to say that *its own* officers are exercising this decisional authority from Atlanta, then it is simply wrong.

Every one of the business departments listed above is directed, coordinated, and controlled by Louisville-based officers. Human resources is led by Sharnika Glenn, the VP of HR. **Exhibit 19**. She's based in Louisville. *Id.* The same goes for the VP of corporate security, Carey Kuhl; VP of Labor Relations, John Veentjer; President of Maintenance and Engineering, Troy McCullum; VP and Chief Legal Counsel, Michael Francesconi; Director of Global Communications, Michelle Polk; President of Information Technology, Alp Kiyabasi; not to mention the declarant himself, CFO Dave Parrott. *Id.*

There is simply no question that the "corporate 'brain'" of UPS *Air* is in Louisville. *Hertz*, 559 U.S. at 95. That's why collective bargaining negotiations between UPS Air and the pilots' labor union occur in Louisville, not Atlanta. According to a recent union press release, "Louisville is uniquely positioned for these negotiations as the city is the headquarters location for both UPS Air and the [pilot's union]." **Exhibit 20**, Independent Pilots Association Press

Release. Indeed, contrary to Parrott's assertions, UPS Air's entire collective bargaining negotiating committee is comprised of Kentucky-based staff and chaired by Kentucky-based VP of Labor Relations John Veentjer. **Exhibit 21**, Teamsters Local 89/UPS Louisville Air Rider Agreement, at 47; **Exhibit 22**, LinkedIn Profiles of Collective Bargaining Committee.

Also contrary to Parrott's assertions, UPS Air commands its entire aircraft fleet from Louisville. In Parrott's telling, Louisville is just one hub among many—co-equal with places like "Anchorage, Ontario and Miami," with each hub employing its own "Chief Pilots." Parrott Decl. ¶¶ 13–14. But according the Anchorage chief pilot's own statements to NTSB investigators, the reality is that even the chief pilots at those other locations are subordinate and answerable to the company-wide chief pilot "in Louisville" who "owns the whole fleet," regardless of location. **Exhibit 23**, NTSB Interview Report.

Nor is there any merit to UPS Air's contention that Atlanta-based personnel are responsible for the company's big-ticket financial decisions like aircraft procurement and non-aircraft expenditures over $50,000. For one thing, "control[]" of the airline's "financial resources" is required, by federal law, to reside in Kentucky with the Bill Moore, UPS Air's "accountable executive," not with parent company officers in a different state. 14 C.F.R. § 5.25(a)(1). For another, the UPS Air president that preceded Moore—Brendan Canavan, who led the company from 2014 to 2022—has represented publicly that the Louisville-based president, not parent-company officers, exercises "[f]ull P&L responsibility" for the airline. **Exhibit 19**. In any case, UPS Air has not identified even one Atlanta-based officer who is charged with making financial decisions for the company. And the mere fact that the corporate parent exercises approval authority over certain aspects of subsidiary budgeting does not affect the nerve-center analysis. *Offill*, 791 F. Supp. 3d at 799.

10

Finally, UPS Air inaccurately contends that "the majority of UPS Co.'s officers and directors are in Georgia." Response Br. at 6. It bases that assertion on the Secretary of State filings attached to Plaintiffs' motion, which list the same Atlanta "business address[]," *id.*, for three officers: "CFO" Brian Dykes, "Secretary" Norm Brothers, and "CEO" Bill Moore. ECF No. 57-1, PageID.320. Even taking all of UPS Air's evidence at face value, its conclusion that "the majority" of UPS Air officers are in Atlanta is wrong for many reasons. *First*, according to UPS Air's own declarant and its response brief, the company's CFO is Dave Parrott, not Brian Dykes, and Parrott is located in Louisville. Parrott Decl. ¶ 2; **Exhibit 19**.[3] *Second*, it is undisputed that Bill Moore is located in Louisville, not Atlanta. ECF No. 57-1, PageID.408, 602–03. *Third*, even if all three were actually located in Atlanta, UPS Air contends the company has "34 current officers." Parrott Decl. ¶ 5. Three is not a "majority" of 34. Response. Br. at 6.

C.    **The Remaining Arguments in UPS Air's Brief Are Unsupported and Erroneous.**

Two more arguments in UPS Air's brief are worth a quick mention. One of those arguments is legal, the other factual. And both are plainly inadequate.

Start with the factual argument. UPS Air claims its Louisville officers exercise only "operation control," not "nerve center" control. It makes no effort to explain this distinction. Instead, it offers a litany of activities, allegedly occurring solely in Atlanta, that it claims constitute "nerve center" decision-making. Here's the list:

> … labor relations, corporate finance, accounting and taxation, non-flight personnel management, capital cost and improvement decisions, strategic planning for growing or shrinking the company, decisions about what markets to serve, what contracts to enter into, what other entities to enter into strategic partnerships with, and how UPS Co. will interface with other parts of the UPS package delivery network.

---

[3] Brian Dykes appears to be the CFO of the parent company, not the Louisville-based airline subsidiary. *See* https://about.ups.com/us/en/our-company/leadership/brian-dykes.html.

Response Br. at 12. There are two problems with this list. First, UPS Air doesn't identify a single Atlanta-based officer responsible for any of these activities, and the record shows the officers directly responsible for everything at least up to "personnel management" are all located in Louisville. *See* Section I.B., *supra*. Second, for everything appearing after "personnel management," UPS Air offers no evidence of *any* kind. In other words, most of the list doesn't appear in either of the declarations attached to its brief. The brief is simply asserting things without support.

The legal argument is just as weak. UPS Air attempts to liken this case to *Pegasus Indus., Inc. v. Martinrea Heavy Stampings, Inc.*, 2016 WL 3043143 (E.D. Ky. May 27, 2016), and *Elliott v. Yamamoto FB Eng'g, Inc.*, 2018 WL 852375 (W.D. Ky. Feb. 13, 2018). In the former, a defendant removed to federal court based on diversity jurisdiction claiming that, although it had a factory site in Shelby County, Kentucky, its principal office was in Ontario, Canada. That's because the company's officers and directors were in Canada, the highest-ranking on-site officer at the Kentucky plant was "neither an officer nor a director of the corporation, and no Martinrea officers or directors reside[d] in or work[ed] from Shelbyville." *Pegasus*, 2016 WL 3043143, at *3. Likewise, in *Elliott*, this Court denied a motion to remand because the only evidence in the record was that the defendant subsidiary company's officers were located at the corporate parent's headquarters in Japan, not in Kentucky. *Elliott*, 2018 WL 852375, at *3.

This case is the opposite. The *Pegasus* and *Elliott* decisions actually support the plaintiffs' request for remand. In *Pegasus* and *Elliott*, all the subsidiary officers were outside of Kentucky, so the nerve center was the place where those officers worked. The defendants in those cases both argued, and proved, that the officers of the subsidiary company *were themselves* located at the parent company's out-of-state headquarters. They did not take the untenable

12

position adopted by UPS Air, which is that diversity should be defeated because parent company officers not employed by UPS Air exercise some measure of oversight regarding subsidiary company operations. Here, all but one of the UPS Air officers identified in the record reside in Louisville. UPS Air has not provided any evidence showing that a single UPS Air officer directs, controls, or coordinates company activities from anywhere other than Louisville. As such, UPS Air's corporate brain is located in Louisville, not 420 miles away where employees of a different company reside.

**II.     UPS Air Badly Mischaracterizes Federal Regulations to Minimize the Authority of Its "Accountable Executive."**

In *DeVore*, this Court was not asked to consider the impact of UPS Air's federal regulatory documents, which make clear that the airline's "accountable executive" is its President, Bill Moore, who is based in Louisville. UPS Air goes to great lengths to minimize that designation, implying that it really is little more than a corporate safety captain. But that's a blatant misrepresentation of the controlling federal scheme.

UPS Air is an "FAA certified Part 121 air carrier," as it reminded the federal court in *Chau*. ECF No. 57-1, PageID.350. That means it's in the business of running an airline. In exchange for that FAA certification, the government demands that each airline designate an "accountable executive." 14 C.F.R. § 5.25(a). That person is not merely tasked with "ensur[ing] that the airline has a safety policy," as UPS Air claims. Response Br. at 12. Rather, by federal law, the buck must stop with the accountable executive across all aspects of the airline's business. The regulation is clear that all certificated air carriers must "identify an accountable executive who, irrespective of other functions":

> (1) Is the **final authority** over operations authorized to be conducted under the person's certificate(s) or Letter(s) of Authorization.

> (2) **Controls the financial resources** required for the operations to be conducted under the person's certificate(s) or Letter(s) of Authorization.
>
> (3) **Controls the human resources** required for the operations authorized to be conducted under the person's certificate(s) or Letter(s) of Authorization.
>
> (4) **Retains ultimate responsibility for the safety performance** of the operations conducted under the person's certificate(s) or Letter(s) of Authorization.

14 C.F.R. § 5.25(a) (emphasis added). The regulation makes the accountable executive responsible not only for safety, but for all aspects of the airline's activities—including human resources and finance, which UPS Air concedes are core "nerve center" functions. Response Br. at 6, 19. In other words, the federal regulation effectively requires UPS Air's nerve center to be in Louisville, where Bill Moore is located.

It makes sense that this authority would rest in the hands of UPS Air officers, not the parent company. After all, there is no indication in the record that a single Atlanta-based officer of either company has the education, training, and expertise to run an airline business. But the officers based in Louisville certainly do. The company's highest-ranking officers—Bill Moore, Houston Mills, and Troy McCullum—are all pilots or aerospace engineers by trade, ECF No. 57-1, PageID.408–413, as is typical of companies in the airline industry. And for good reason— an airline company carries a great deal more risk than other lines of business, and when something goes catastrophically wrong, as it did in November 2025, the top-echelon decisionmakers need the training and experience to respond appropriately.

The FAA certainly treats UPS Air as though its nerve center is in Louisville. That's where it chose to base the certificate management office for the airline. ECF No. 57-1, PageID.605. The CMO, which is staffed with 47 people, is the regulatory office responsible for monitoring the airline's compliance with federal law. **Exhibit 24**, Louisville CMO Staff

14

Directory. If control of the airline doesn't emanate from Louisville, all those regulators are in the wrong place.

When UPS Air designated its Louisville president Bill Moore as the company's accountable executive, it represented to the FAA that final authority for all business activities—including airline operations, human resources, finances, and safety—rest on his Louisville-based shoulders. If it were true that final authority over the company actually lies elsewhere, then UPS Air is a federally non-compliant airline. Fortunately, all the evidence (other than a pair of self-serving declarations) uniformly shows that it is not true. The nerve center of the airline company resides in Louisville, where its President and virtually all of its officers direct, coordinate, and control the company's core *airline* activities.

### Conclusion

For the foregoing reasons, the Court should grant the motion and remand the case to state court.

Respectfully submitted,

*/s/ Burt A. Stinson*
Michael P. Abate
Burt A. (Chuck) Stinson
Kaplan Johnson Abate & Bird LLP
710 West Main Street, 4th Floor
Louisville, KY 40202
(502) 416-1630
mabate@kaplanjohnsonlaw.com
cstinson@kaplanjohnsonlaw.com

Sam Aguiar
Jonathan B. Hollan
Sam Aguiar Injury Lawyers PLLC
1900 Plantside Drive
Louisville, KY 40299
(502) 813-8890
sam@kylawoffice.com
jhollan@kylawoffice.com

15

Robert A. Clifford*
Kevin P. Durkin*
Bradley M. Cosgrove*
Tracy A. Brammeier*
Charles R. Haskins*
John V. Kalantzis*
Julia C. Brosnahan*
Clifford Law Office PC
120 LaSalle Street, Suite 3600
Chicago, IL 60602
(312) 899-9090
* *Pro hac vice forthcoming*

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2026, a copy of the foregoing was served on all counsel of record via the Court's CM/ECF filing system.

*/s/ Burt A. Stinson*